# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Bradley J. Hillstrom, M.D.,

             Plaintiff,

    v.

John R. Kenefick, Briggs and Morgan,
P.A., and GE Group Life Assurance
Company, formerly known as Phoenix
American Life Insurance Company,

             Defendants.

**MEMORANDUM OPINION
AND ORDER**
Civil No. 04-3820 ADM/JSM

---

Paula Weseman Theisen, Esq., Meagher & Geer, PLLP, Minneapolis, MN, argued for and on behalf of Plaintiff Bradley J. Hillstrom, M.D.

Michael R. Cunningham, Esq., Gray, Plant, Mooty, Mooty & Bennett, P.A., Minneapolis, MN, argued for and on behalf of Defendant John R. Kenefick.

William L. Davidson, Esq., Lind, Jensen, Sullivan & Peterson, P.A., Minneapolis, MN, argued for and on behalf of Defendant GE Group Life Assurance Company.

---

## I. INTRODUCTION

On June 30, 2005, oral argument before the undersigned United States District Judge was heard on Plaintiff Bradley J. Hillstrom, M.D.'s ("Plaintiff" or "Hillstrom"), Defendant GE Group Life Assurance Company's ("GEGLAC") and Defendants John R. Kenefick and Briggs & Morgan, P.A.'s (collectively, "Briggs," unless otherwise noted) Motions for Summary Judgment [Docket Nos. 69, 72, 65, respectively].

In a December 9, 2005 Order [Docket No. 45], this Court granted GEGLAC's Motion to Dismiss [Docket No. 10] on statute of limitations grounds. On June 30, 2005 oral argument was also heard on Briggs' Motion to Reconsider the statute of limitations issue [Docket No. 65] and Motion to Strike Reply Declarations Regarding Plaintiff's Motion for Summary Judgment

[Docket No. 117].

In the Third Amended Complaint [Docket No. 58], Hillstrom claims Briggs committed legal malpractice by failing to either advise Plaintiff of the applicable statute of limitations for his disability claim or commence an action before the expiration of the limitations period.  In the event his claim is not time-barred, Hillstrom argues GEGLAC wrongfully denied his claim for long-term disability benefits and seeks to recover pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a)(1)(B).  Briggs has counterclaimed and cross-claimed [Docket No. 2] for a declaratory judgment that 1) Hillstrom's claim for disability benefits under GEGLAC's Policy is not barred by the statute of limitations and 2) Hillstrom is not entitled to benefits under GEGLAC's Policy, or if he is entitled to benefits, those benefits are limited by the Policy terms.  GEGLAC argues it should be released from the action because any claim by Plaintiff for benefits is barred by the statute of limitations.  For the reasons set forth below, GEGLAC and Briggs' Motions for Summary Judgment are granted and Hillstrom's Motion for Summary Judgment is denied.

## II.  BACKGROUND[1]

In 1988, Hillstrom became the Chief Executive Officer ("CEO") of Rehab One, Inc. ("Rehab One").  R. (Theisen Decl. [Docket No. 71] Ex. 1) at AR0036.  On April 1, 1989, Hillstrom entered into an Employment Agreement with Rehab One to serve as its CEO.  Id. at AR0622-24.  Subsequently, Hillstrom and two other Rehab One officers formed HCA Partners ("HCA").  Id. at AR0622-32.  Effective January 7, 1994, Rehab One entered into a Management Agreement with HCA Partners.  Id. at AR0632-33.  Under the terms of the agreement, Rehab

---

[1] For purposes of the instant Motion, the facts are viewed in the light most favorable to the nonmoving party.  See Hamm v. Groose, 15 F.3d 110, 112 (8th Cir. 1994).

2

One agreed to pay $1,200,000 per year ($100,000 per month) for services provided by Hillstrom and two other officers.  Id. at AR0633.  The Management Agreement does not specify how the fee will be divided amongst the officers.  Id.  Hillstrom also owned Rehabilitation Medicine Consultants ("RMC").  He directed HCA Partners to distribute any compensation from Rehab One to RMC.  Id. at AR0618-19, AR0586-87.  RMC then issued payments, reported on W-2 forms, to Hillstrom.  Id.

Effective January 1, 1994, Rehab One obtained a group long-term disability insurance policy (the "Policy") from Phoenix American Life Assurance Company.[2]  Phoenix Am. Life Ins. Co. Group Ins. Policy ("Policy") (Theisen Decl. Ex. 3).   GEGLAC is the successor in interest to Phoenix American Life Assurance Company.  The Policy covered employees and officers of Rehab One.  Id.

On January 16, 1995, Hillstrom fell while snowboarding in Wisconsin, striking his head and back.  Id. at AR0654, AR0664.  Upon returning to Minnesota, Hillstrom complained of severe headaches and a diagnostic MRI of his brain was performed.  Id. at AR0641.  Although the results of the MRI were normal, Hillstrom continued to experience severe headaches and began self-medicating with Vicodin and alcohol.  Id. at AR0229.  His alcohol and drug use continued until, on April 19, 1996, he began treatment at Hazelden for chemical dependency.  Id. at AR0599, AR0475.

Upon Hillstrom's discharge, he consulted with Don Moyer, M.S.W.  Id. at AR0511-12.  Hillstrom continued to experience memory disturbance and difficulty concentrating.  Id.  As a

---

[2]  The "Policy" in this case consists of a document called a "Policy" and a second document called a "Certificate."  Except as otherwise indicated, the term "Policy" herein refers to the Policy and the Certificate together.

3

result of Hillstrom's impairments, Moyer concluded Hillstrom was disabled and unable to function as a physician or a CEO.  Id.  In July 1996, Dr. John Rauenhorst, a psychiatrist, found Hillstrom "currently disabled" and determined "[i]n retrospect, this disability began in January of 1995." Id. at AR0603.  Hillstrom subsequently saw a number of other doctors.  On May 24, 1998, the Social Security Administration determined Hillstrom had been disabled since January 16, 1995 (the accident date) and awarded him monthly disability benefits.  Id. at AR0217-18.

In mid-1996, Hillstrom retained Kenefick, a shareholder at Briggs, to represent him in his claim for long-term disability benefits against GEGLAC.  Briggs' Resps. to Pl.'s First Set of Reqs. for Admis. (Theisen Decl. Ex. 5) at 5.  Kenefick submitted Hillstrom's claim to GEGLAC on October 17, 1996.  R. at AR0653-68.

Beginning with an October 24, 1996 letter from claim representative Christopher Murphy, GEGLAC repeatedly asked for additional information to establish Hillstrom was an employee of Rehab One, was compensated by Rehab One, and that his disability was the result of his snowboard accident rather than chemical dependency.  Id. at AR0642, AR0646-47, AR 0648-49, AR0650-51, AR0652, AR0514, AR0453, AR0457-58, AR0464-65.  Eventually, GEGLAC retained a national accounting firm, Coopers & Lybrand ("Coopers"), to determine, inter alia, "whether Hillstrom performed his work duties and derived his reported income directly from Rehab One." Id. at AR0436.  In December 1997, Coopers concluded Hillstrom had no "insurable income" under the Policy because he did not receive his income directly from Rehab One, the policy holder.  Id. at AR0339.

In January 1998, GEGLAC officially denied Hillstrom's claim on the basis that:

Dr. Hillstrom has not provided the required Proof of Eligibility, Proof of Disability and Proof of Loss as defined under this plan in order to qualify for payment of benefits for a Period of Disability prior to the 02/01/97 termination date of insurance coverage.

4

Id. at AR0059.  Murphy, writing for GEGLAC, cited a definition for "Proof of Loss" that

Hillstrom contends does not appear in the Policy.[3]  See id.; Policy at 25.

On July 30, 1998, Kenefick requested the "group policy," noting he had previously

received only the certificate.  Id. at AR0207-208.  Michele Kelleher ("Kelleher"), a GEGLAC

employee, responded by sending the master policy and the certificate to Kenefick and advised

him this information constituted the "entire policy."  Id. at AR0202-05.  A month later, Elizabeth

DiCola ("DiCola"), another Briggs attorney, contacted Kelleher to confirm Briggs had the entire

policy.  Kelleher responded that they did.  Id. at AR0200-01.  On January 25, 1999, DiCola

notified Kelleher by phone that GEGLAC had forwarded "only one side of each page" of the

Certificate.  Id. at AR0190.  Kelleher did not respond to DiCola's call but subsequently wrote, in

an internal memorandum dated March 22, 1999, "[i]t appears when the Cert was copied, only the

even pages were sent."  Id. at AR0046-48.  Kenefick continued using the incomplete copy of the

Policy throughout the remainder of the claims process.

---

[3]  The Denial Letter states:

> As part of Proof of Loss, we have the right to require:
> 1)    Your signed statement identifying all Other Income benefits;
> 2)    Proof that you and your dependents have applied for all Other Income benefits
>       that are available; and
> 3)    Business and financial records or any other pertinent financial documentation we
>       may deem necessary.
>
> We may require additional Proof of your claim at any reasonable time during the Period
> of Disability.  Any additional Proof of your claim must be returned to us within 30 days
> after we request it.

R at AR0059.  Hillstrom notes that the third subsection does not appeared in the certified version
of the Policy but it does appear in the version of the Policy presented in Rule 26 disclosures.
Compare Policy at 25 with R. at AR0023.  The Court finds this omission immaterial, however,
since the following sentence in both versions includes the catch-all that GEGLAC can "require
additional Proof of your claim at any reasonable time during the Period of Disability."  Id.

Hillstrom, through the Briggs firm, filed a timely appeal of the claim denial to GEGLAC. Id. at AR0085-AR0110.  In a letter dated May 17, 1999, Kelleher of GEGLAC denied Hillstrom's appeal.  Id. at AR0053-54.  In addition to the reasons set forth in the prior denial letter, Kelleher also found that the Management Agreement with HCA Partners superseded the Employment Agreement.  Id.  She cited the Policy's definitions for "Active Full-Time Employee" and "Salaried Employee."  Id.  Ultimately, she concluded Hillstrom did not receive a salary from Rehab One and was therefore ineligible for long-term disability benefits under the terms of the Policy.  Id. at AR0054.  Hillstrom argues that, although the term "Salaried Employee" appears in the boilerplate definitions, it does not appear in any substantive provisions of the Policy.

Following the denial of the appeal, Kenefick advised Hillstrom that the statute of limitations for pursuing an ERISA action against GEGLAC was six years.[4]  Briggs' Answer [Docket No. 2] ¶ 18.  Having exhausted his administrative remedies, Plaintiff was entitled to bring an action under ERISA, pursuant to 29 U.S.C. § 1132(a)(1)(B), seeking long-term disability benefits as of May 17, 1999, the date of denial.  Plaintiff failed to file any legal action on his claim until he filed the present suit in Minnesota state court on July 19, 2004.  The suit was subsequently removed to the United States District Court for the District of Minnesota on August 17, 2004.  If the statute of limitations is found to bar the instant action, Hillstrom alleges Briggs was professionally negligent.

## III. DISCUSSION

### A.    Summary Judgment Standard

---

[4]  All parties agree the Policy is an "employee welfare benefit plan" as defined by ERISA, 29 U.S.C. § 1001(1).

6

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall issue "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); see Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  On a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party.  Ludwig v. Anderson, 54 F.3d 465, 470 (8th Cir. 1995).  The nonmoving party may not "rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial."  Krenik v. County of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995).

**B.    Hillstrom's Eligibility for Benefits**

**1.    Policy Provisions**

As an initial matter, the parties contest  which version of the policy was in effect on January 16, 1995, the date of Hillstrom's accident.  Three versions of the policy have been produced in discovery.  On January 7, 1997, GEGLAC, acting through Murphy, sent Kenefick a policy with a "last date printed" of March 12, 1994.[5]  Apparently, this policy was missing every other page and was the version used throughout the claims administration process.  R. at AR0520-533.  A second, complete version with a last date printed of March 23, 1999 was subsequently provided during GEGLAC's Rule 26 disclosures and represented as being the policy in effect at the time of Hillstrom's accident.  Id. at AR0001-27.  Finally, a third, complete

---

[5]  Each time GEGLAC prints a copy of a policy from its computer system, the date it is printed appears on the bottom as the "last date printed."

version with a last date printed of November 11, 2004 was produced and certified under oath as

the version in effect on January 1, 1995.  Michaud Aff. (Theisen Decl. [Docket No. 71] Ex. 5);

Policy.

The three versions of the policy differ in a few material respects.  The first and second

versions of the policy define "Eligible Class" as:

> EACH ACTIVE OFFICER WHOSE BASIC MONTHLY EARNINGS ARE MORE
> THAN $35,000

Id. at AR0520, AR0001.  However, the third version of the policy defines "Eligible Class" as:

> ALL ACTIVE FULL-TIME EMPLOYEES AS LISTED BELOW:
> EACH OFFICER WHOSE BASIC ANNUAL EARNINGS ARE GREATER THAN
> $35,000

Policy at 3.

As previously discussed, the definition of Proof of Loss also differs in the second and

third versions of the Policy.  See supra n. 3.  Unlike the second version of the Policy, the third

version omits the third subsection of the definition: "Business and financial records or any other

pertinent financial documentation we may deem necessary."  Compare Policy at 25 with R. at

AR0023.

The second version of the policy includes language giving GEGLAC "discretionary

authority to make claim, eligibility and other administrative decisions."  Id. at AR0531.  The first

and third versions of the policy do not contain such language.  In the absence of plan language

specifically giving the fiduciary discretionary authority to determine coverage, courts review

ERISA benefit claim denials under a de novo standard.  Firestone Tire & Rubber Co. v. Bruch,

489 U.S. 101, 115 (1989); Aetna Healthcare Inc. v. Davila, 124 S. Ct. 2488, 2496 (2004); Adams

v. Continental Cas. Co., 364 F.2d 952, 953-54 (8th Cir. 2004).  Under this standard, the Court

will uphold a denial only if it is supported by "evidence bordering on a preponderance." <u>Morgan v. UNUM Life Ins. Co. of Am.</u>, 346 F.3d 1173, 1177 (8th Cir. 2003).

Hillstrom argues the third version of the policy, which was certified by GEGLAC as the policy in effect at the time of Hillstrom's accident, should govern the Court's analysis. However, Hillstrom also contends the "Eligible Class" language contained in the third version of the Policy is incorrect and that the Court should apply the definition of "Eligible Class" included in the first and second versions of the policy. Although Hillstrom attempts to pick and choose the most favorable policy language, resolution of which of these provisions to apply does not alter the outcome. Therefore, for purposes of the instant motion, the Court will apply the language contained in the third version of the policy, with the exception of the "Eligible Class" provision, which will be interpreted as defined in the second version of the policy. Consequently, the Court will review GEGLAC's decision to deny Hillstrom long-term disability benefits under a <u>de novo</u> standard.

The "INSURANCE SCHEDULE" section of the Policy contains the following relevant provisions for determining a claimant's eligibility for long-term disability benefits:

> **Coverage Eligibility**:
> EACH FULL-TIME NON-UNION EMPLOYEE
>
> **Eligible Class:**
> EACH OFFICER WHOSE BASIC ANNUAL EARNINGS ARE GREATER THAN $35,000
>
> **Monthly Benefit:**
> The Monthly Benefit will be an amount equal to the lesser of:
> 1.    60% of your Basic Monthly earnings
> 2.    The maximum monthly benefit of $7,600.
> The applicable amount above will then be reduced by any other income.
> The minimum monthly benefit is $50.

Policy at 3. The Policy also includes the following relevant definitions:

**Active Full-time Employee**
You are an Active Full-Time Employee actively at work on any day if on that day you are:
1.        Working at your Employer's usual place of business or such place or places as the Employer's normal course of business may require; and
2.        Performing all of the duties of your job on a Full-time Basis and working on a regular work schedule of at least 30 hours per week unless otherwise stated in the INSURANCE SCHEDULE.

**Basic Monthly Earnings**
"Basic Monthly Earnings" means your gross monthly rate of earnings from your Employer in effect prior to your Period of Disability.  It includes employee pre-tax contributions to a deferred compensation plan which is defined by a documented, pre-determined formula.  It does not include:
1.        Commissions
2.        Bonuses
3.        Overtime pay; or
4.        Any other fringe benefit or extra compensation.

**Eligible Employee**
Someone who is in a classification eligible for insurance.  Refer to the INSURANCE SCHEDULE for Eligible Class.

**Employer (Eligible Employer)**
The Policyholder shown on the first page.

**Full-time Basis**
A regular work schedule of at least 30 hours per week.

**Proof**
Any information that is:
1.        Required by us under the terms of the policy; and
2.        Satisfactory to us.

Id. at 5-9.  In the "EMPLOYEE INSURANCE" section of the Policy, it states:

**Date of Eligibility (waiting period)**
Only Employees who are Active Full-time Employees in an Eligible Class as shown in the INSURANCE SCHEDULE are eligible for coverage under this plan.

Policy at 11.  Finally, the "LONG TERM DISABILITY CLAIM PROVISIONS," includes the following provision:

**Proof of Loss**
As part of Proof of Loss, we have the right to require:

10

1.)     Your signed statement identifying all Other Income benefits;
2.)     Proof that you and your dependents have applied for all Other Income benefits
        that are available; and
3)      Business and financial records or any other pertinent financial documentation we
        may deem necessary.

We may require additional Proof of your claim at any reasonable time during the Period
of Disability.  Any additional Proof of your claim must be returned to us within 30 days
after we request it.

Id. at 25.

### 2.    Reasons for Denial

The initial denial letter states that Hillstrom failed to provide the required "Proof of

Eligibility, Proof of Disability and Proof of Loss documentation" necessary to receive long-term

disability benefits under the terms of the plan.  R. at AR0058-59.  Although the letter denying

Hillstrom's appeal found that he was not a "Salaried Employee," according to a boilerplate

definition that does not appear in any substantive provision of the Policy, it also references the

definition of "Active Full-Time Employee" and incorporated the reasons set forth in the prior

correspondence.  Id. at AR0053-54.  The letter further notes that Hillstrom did not receive a

salary from Rehab One.  Id. at AR 0054.  This conclusion echoes GEGLAC's repeated

statements that "Dr. Hillstrom did not have any insurable income under this group disability

policy."  Id. at AR0453; see also id. at AR0583-84, AR0457, AR0464.  In the course of this

litigation, Briggs and GEGLAC have bolstered the proffered reasons for the denial and provided

additional reasons why Hillstrom is not eligible for long-term disability benefits or why those

benefits should be limited.  These arguments include whether Hillstrom's disability resulted

from the snowboarding accident or substance abuse and whether Hillstrom remains disabled.

Hillstrom argues that a court reviewing a denial may not consider any reason not relied

upon by the insurer in denying the coverage.  Hillstrom contends that considering additional

grounds for the refusal would impermissibly permit claimants "to be sandbagged by after-the-fact plan interpretations devised for purposes of litigation." Marolt v. Alliant Techsystems, Inc., 146 F.3d 617, 620 (8th Cir. 1998).

Plaintiff misapplies Marolt and its progeny. Marolt concerned a policy with language granting discretion to the plan administrator to make benefit determinations. Id. at 619-20. The Eighth Circuit found it owed no discretion to the insurer when it did not provide a timely or specific explanation for the decision or relied on explanations not set forth at the time of the denial. Id. at 621. Instead, the court reviewed such explanations for the denial under a de novo standard. Id.; see also, Seman v. FMC Corp. Retirement Plan for Hourly Employees, 334 F.3d 728, 733 (8th Cir. 2003). Nothing in Marolt prohibits a court from considering additional justifications not relied upon at the time of the denial.

On the contrary, the Eighth Circuit has clearly stated that a court may consider such additional justifications under a de novo standard. In Farley v. Benefit Trust Life Ins. Co., the Eighth Circuit held that in a de novo review of a denial of benefits under an ERISA welfare benefit plan, the trial court could consider "policy provisions [that] clearly may . . .be a basis for such a denial" even if those provisions were not "specified . . . as the basis of denial of coverage." 979 F.2d 653, 660 (8th Cir. 1992). The Eighth Circuit affirmed Farley's holding in Weber, where it stated:

> a trial court must consider all of the provisions of the policy in question if those provisions are proffered to the trial court as a reason for denial of coverage, since to do otherwise would "permit the oral modification of employee welfare plans governed by ERISA, a result manifestly in conflict with the intent of the statute and with the case law governing it."

Weber v. Saint Louis Univ., 6 F.3d 558, 560 (8th Cir. 1993) (quoting Farley, 979 F.2d at 660). Therefore, the Court will consider all provisions proffered by the parties as a reason for the

denial of coverage under a <u>de novo</u> standard of review.

**3.    Was Hillstrom an Employee Who Received "Annual Earnings" from Rehab One?**

GEGLAC and Briggs both argue that Hillstrom was not eligible for benefits because he did not provide the require proof of eligibility and proof of loss to show he was an "employee" who received "annual earnings" from Rehab One. Under the terms of the policy, to be eligible for long-term disability benefits, Hillstrom must be a full-time non-union employee who is an officer of Rehab One and has annual earnings greater than $35,000. <u>See</u> Policy at 3, 11.[6]

On April 1, 1989 Rehab One and Hillstrom entered into an Employment Agreement through which Hillstrom became CEO of Rehab One. R. at AR0622. The Employment Agreement could be terminated by either party, with or without cause, with thirty days written notice. <u>Id.</u> Under the Employment Agreement, Hillstrom's compensation was limited to expenses and company stock. <u>Id.</u> at AR0622-23.

On January 7, 1994, Rehab One entered into a Management Agreement with HCA. <u>Id.</u> at AR0632-33. HCA was a Wyoming limited liability company formed by Hillstrom and two other officers or directors of Rehab One, John E. Clark, M.D. and Scott D. Hillstrom (the "HCA Principals"). <u>Id.</u> at AR0632. The Management Agreement provides, in relevant part:

1.    <u>Management Services</u>. HCA shall furnish the personal services of the HCA Principals to perform all general management services (excepting services to be provided

---

[6] As previously discussed, the Court analyzes Hillstrom's claim under the "Eligible Class" provision contained in the second version of the Policy, which does not contain the disputed "Active Full-Time Employee" language. However, the third version of the policy contains a "Coverage Eligibility" provision that includes only "full-time non-union employee[s]." Similarly, the "Date of Eligibility" provision in the third version of the policy states "Only Employees who are Active Full-time Employees in an Eligible Class as shown in the INSURANCE SCHEDULE are eligible for coverage under this plan." Consequently, Hillstrom must be an active full-time employee to qualify for benefits under even this version of the Policy.

by Rehab One's President) necessary or appropriate to Rehab One's business. HCA shall be at liberty to organize and perform such services in the manner HCA considers to be in the best interest of Rehab One, allocating the resources and facilities of Rehab One and HCA in such fashion as HCA sees fit from time to time in the reasonable exercise of its discretion.

2.      Compensation. Commencing on the date of this agreement, in consideration of the management services to be provided by HCA hereunder, Rehab One shall pay an annual fee of $1,200,000 to HCA, payable at the rate of $100,000 per month (the "Management Fee"). The Management Fee shall be the entire consideration for all services to be rendered by HCA and/or by the HCA Principals, except that in addition to the Management Fee, Mr. [Scott] Hillstrom shall be a payroll employee of Rehab One and shall receive a monthly salary of $8,333.33.

Id. at AR0632-33.

Hillstrom's relationship with Rehab One, as well as the source of his annual earnings, is governed by the terms of these Agreements and the Policy. Interpretation of an ERISA plan is "simply one of contract interpretation." Jacobs v. Pickands Mather & Co., 933 F.2d 652, 657 (8th Cir. 1991) (citations omitted). Under Minnesota law, the meaning and effect of an unambiguous contract is a matter of law for the court. Porous Media Corp. v. Midland Brake, Inc., 220 F.3d 954, 959 (8th Cir. 2000); Green Tree Acceptance, Inc. v. Wheller, 832 F.2d 116, 117 (8th Cir. 1987) (applying Minnesota law); In re Turners Crossroad Dev. Co., 277 N.W.2d 364, 369 (Minn. 1979). In interpreting a contract, the language is to be given its plain and ordinary meaning. Brookfield Trade Center, Inc. v. County of Ramsey, 584 N.W.2d 390, 394 (Minn. 1998). A court must read contract terms in the context of the entire contract, interpreting the contract in a way that gives meaning to all its provisions. Id. "Only if neither the plan clause in which the terms in question are located, nor the entire plan instrument provides clarification, should the court consider extrinsic evidence to determine the meaning and effect of a particular clause." Coonley v. Fortis Benefit Ins. Co., 956 F. Supp. 841, 850 (N.D. Iowa 1997), aff'd 128 F.3d 675 (8th Cir.) (citing Jenson v. SIPCO, Inc., 38 F.3d 945, 950 (8th Cir.

14

1994)).

a.    **"Employee"**

For the reasons set forth below, the Court finds Hillstrom is not eligible for long-term

disability benefits because he is not an employee of Rehab One.  The policy's two-pronged

definition for active full-time employee requires the claimant to be:

1.    Working at <u>your Employer's</u> usual place of business or such place or places as the Employer's normal course of business may require; and

2.    Performing all of the duties of your job on a Full-time Basis and working on a regular work schedule of at least 30 hours per week unless otherwise stated in the INSURANCE SCHEDULE.

Policy at 5 (emphasis added).  Furthermore, "Basic Monthly Earnings" is defined as "your gross

monthly rate of earnings from <u>your Employer</u> in effect prior to your Period of Disability."

(emphasis added). <u>Id.</u>  Therefore, Hillstrom is eligible only if Rehab One is his employer.

Although the Policy sets forth the location and number of hours of work necessary for a claimant

to qualify as an "active, full-time employee," it does not provide a further definition of what

constitutes an employee.

The terms of the Management Agreement, however, make it clear that Hillstrom is an

independent contractor ("IC"), rather than an employee.  Under the Management Agreement,

Rehab One contracted with HCA for the management services of Bradley Hillstrom, Clark and

Scott Hillstrom.  R. at AR0632.  The Agreement also grants HCA discretion to organize and

perform services and to allocate the resources and facilities of both Rehab One and HCA.  <u>Id.</u> at

AR0632-33.  In addition, the Agreement sets an annual fee, payable to HCA, for the

management services but does not specify how the fee will be divided amongst the HCA

principals.  <u>Id.</u> at AR0633.  Significantly, the Agreement explicitly designates Scott Hillstrom,

15

not Plaintiff, as "a payroll employee" of Rehab One.  Id.

In Coonley, the plaintiff, an officer of ABCM Corporation ("ABCM") entered into an employment agreement which provided that all of Coonley's salary was paid directly to his professional corporation ("PC").  Id. at 845-47.  In an exhaustive opinion, the district court found Coonley was not eligible for life insurance benefits under his ERISA policy because he was not an "employee" of ABCM.  Id. at 860.  In a cursory opinion, the Eighth Circuit upheld the ruling based on the reasons set forth by the district court.  Coonley, 128 F.3d at 675.

"In interpreting ERISA plans, the plainly stated terms 'should be accorded their ordinary, and not specialized, meanings,'" Wilson v. Prudential Ins. Co., 97 F.3d 1010, 1013 (8th Cir. 1996) (quoting Brewer v. Lincoln Nat'l Life Ins. Co., 921 F.2d 150, 154 (8th Cir. 1990)).  In other words, "the court will reject legal definitions of terms that 'are not consistent with what an average plan participant would understand the words to mean.'" Coonley, 956 F. Supp. at 852-53 (quoting Mansker v. TMG Life Ins. Co., 54 F.3d 1322, 1327 (8th Cir. 1995)); see also 29 U.S.C. § 1022(a)(1).  Based on this guidance, the Coonley court found that Coonley was not an "employee", a.k.a., a "person 'hired' by ABCM to 'work' for 'wages or a salary,'" as that term was defined by Webster's New World Dictionary (2d College Ed. 1984).  Coonley, 956 F. Supp at 853.  The court concluded "ABCM hired Coonley's PC, not Coonley, and Coonley was in turn 'hired' by the PC to perform the task the PC was obligated to perform.  It was the PC that received the 'salary' for Coonley's services . . . while Coonley received his salary from the PC . . ."  Id.  The court also noted it "had every confidence that an average plan participant would not understand the employment arrangement between Coonley, his PC, and ABCM to be an ordinary employee-employer relationship."  Id.

Similarly, in the instant case, Plaintiff Hillstrom was not hired by Rehab One.  Rehab

16

One hired HCA, not Hillstrom, to perform management services.  As a result, under the plain and unambiguous meaning of the term, Hillstrom was not an "employee" of Rehab One.  This characterization is consistent with what an average plan participant would understand "employee" to mean.

The federal common law also contains a multi-factor test for determining whether someone is an employee or an IC.  When an ERISA plan is silent as to the definition of "employee," the Eighth Circuit has directed courts use the federal common law test for distinguishing employees from ICs.  Berger Transfer & Storage v. Central States Pension Fund, 85 F.3d 1374, 1377-78 (1996).  The Eighth Circuit instructed courts to rely on the test set forth by the Supreme Court in Nationwide Mutual Ins. Co. v. Darden, 503 U.S. 318, 323-24 (1992):

> In determining whether a hired party is an employee under the general common law of agency, we consider the hiring party's right to control the manner and means by which the product is accomplished.  Among the other factors relevant to this inquiry are the skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party.

Berger Transfer & Storage, 85 F.3d at 1378 (quoting Darden, 503 U.S. at 323-24).  The Supreme Court has directed that courts first consider "the hiring party's right to control the manner and means by which a task is accomplished" and then balance the other factors in deciding the employee-IC question.  Id.  Although the party's right to control the manner and means by which a task is accomplished is the overarching factor, no single factor is decisive.  Id.

The weight of the factors indicate the relationship between Hillstrom and Rehab One was that of an IC rather than an employee.  The overarching factor is "the hiring party's right to

17

control the manner and means by which the product is accomplished." Darden, 503 U.S. at 323.
The Management Agreement states:

> HCA shall be at liberty to organize and perform such services in the manner HCA considers to be in the best interest of Rehab One, allocating the resources and facilities of Rehab One and HCA in such fashion as HCA sees fit from time to time in the reasonable exercise of its discretion.

R. at AR0632-33. This provision clearly vests discretion in HCA to control the manner and means by which it provides management services to Rehab One. Although the Agreement does require the HCA Principals to provide services, it leaves to HCA's discretion which Principal will perform those services. Thus, the predominant factor weighs heavily in favor of IC status.

An analysis of the other Darden factors is also consistent with this conclusion. Some of the factors do not impact the analysis.[7] A few factors such as the long duration of the relationship between Hillstrom and Rehab One, the source of the instrumentality and tools and the location of the work, favor employee status. However, the weight of the factors favor IC status. The method of payment and tax treatment of the hired party supports Hillstrom's IC status. Rehab One entered into a Management Agreement with HCA, a PC set up by Hillstrom and the other HCA Principals. The Management Agreement dictates the terms of the compensation. Consideration for management services was paid directly to HCA and then distributed to the HCA Principals as HCA saw fit. Hillstrom did not receive a W-2 form from Rehab One. Id. at AR0618-19, AR0586-87. In addition, the Management Agreement grants HCA discretion in determining when and how the management services will be provided, giving Hillstrom discretion over when and how long to work. Based on these factors, the Court

---

[7] Factors that do not impact the analysis because they could support either conclusion include the skills required and whether the hiring party has the right to assign additional projects to the hired party.

concludes Hillstrom was an IC, rather than an employee, of Rehab One. See also Coonley, 956 F. Supp. at 858-59 (finding, based on the Darden factors that plaintiff was an IC).

Hillstrom argues he remains an employee under the 1989 Employment Agreement since neither he nor Rehab One gave written notice of termination. However, the arrangement created in the subsequent Management Agreement is incompatible with the Employment Agreement. By entering into the Management Agreement, the parties evinced an intent to supercede the Employment Agreement. Am. Travelers Life Ins. Co. v. AIG Life Ins. Co., 354 F.3d 755, 759 (8th Cir. 2004) ("When the terms of a contract are clear and unambiguous, the intent of the parties is gleaned from the express language of the agreement") (citation omitted). Furthermore, the nature of Hillstrom's IC relationship with Rehab One, rather than the parties' label for that relationship, is determinative. See Hunt v. Missouri, 297 F.3d 735, 741 (employer may not "affix[] a label to a person that does not capture the substance of the employment relationship").

Finally, Hillstrom argues he is eligible for long-term disability benefits under the terms of the policy because he is one of two named beneficiaries for which premiums were paid. However, the fact that Hillstrom was a named beneficiary of the Policy is not dispositive of his eligibility. Although Coonley was also a named beneficiary under ABCM's life insurance policy, the court nonetheless found he was not eligible under the terms of the policy. Coonley, 956 F. Supp. at 846. The terms of the Policy, specifically, whether Hillstrom was an "employee" of Rehab One, dictate his eligibility. Furthermore, the Policy permitted the policyholder (Rehab One) to include affiliates and subsidiaries in the Policy as participating employers by naming them in the Policy application. Group Policy[8] (Cunningham Aff. [Docket No. 68] Ex. 2) at 2.

---

[8] In this case, Policy reflects the "Policy" itself and not the "Certificate."

However, no affiliates or subsidiaries, including HCA or RMC, are named in the Policy application.

For the reasons set forth above, the Court finds Hillstrom was not an employee of Rehab One and, consequently, was ineligible to recover long-term disability benefits under the terms of the Policy.

### b.    "Annual Earnings"

The Court also concludes Hillstrom did not receive $35,000 or more in annual earnings from Rehab One.  Hillstrom argues the term "earnings" is broader than the term salary and should be construed as "equitable return for work done."  See Lao v. Hartford Life and Accident Ins., 319 F. Supp. 2d 955, 960 (D. Minn. 2004) (quoting Webster's Third New International Dictionary, 714 (1986)).  Even under this broad definition, however, Hillstrom did not receive annual earnings from Rehab One.  By the terms of the Management Agreement, Rehab One paid HCA an annual fee of $1.2 million as "the entire consideration for all services to be rendered by HCA and/or HCA Principals."  R. at AR0633 (emphasis added).  None of the compensation was paid directly to Hillstrom.  Furthermore, the Management Agreement does not set forth what happens with the fee after receipt by HCA.  Based on this plain and unambiguous language, HCA received annual earnings in excess of $35,000 from Rehab One but Hillstrom did not. How HCA chose to divide the fee amongst its principals, what use HCA made of the fees, or the fact that Hillstrom eventually received his share of this fee as salary for W-2 purposes from yet another legal entity, RMC, is irrelevant to proving his status as an employee.

Even assuming Hillstrom remained an employee under the terms of the April 1989 Employment Agreement, Hillstrom is still barred from recovering disability benefits under the "annual earnings" provision of the Policy.  Assuming Hillstrom remained an employee of Rehab

One after the Management Agreement was executed, Rehab One paid "the entire consideration" for Hillstrom's services directly to Rehab One. Id. at AR0633. Consequently, for the reasons previously discussed, Hillstrom did not receive any "annual earnings" from Rehab One.

As Hillstrom is not an "employee" who received "annual earnings" from Rehab One, he is not eligible for long-term disability benefits under the terms of the Policy.[9] As a result, GEGLAC's denial of Hillstrom's claim is supported by a preponderance of the evidence and it is unnecessary to consider Defendants' other reasons for denying the claim.

## C.     Malpractice Claim

In his Complaint, Hillstrom asserts Kenefick, and vicariously Briggs, committed legal negligence by: (1) failing to recognize the initial version of the Policy provided by GEGLAC only contained every other page, and (2) advising Hillstrom the statute of limitations on actions to recover benefits under ERISA policies was six years. Third Am. Compl. ¶ 33. To succeed in a malpractice action, inter alia, a plaintiff must show that "but for" the alleged malpractice, plaintiff would have prevailed on his claim. Macawber Eng'g v. Robson & Miller, 47 F.3d 253,

---

[9] After the parties submitted briefing on the instant motions, the Eighth Circuit issued King v. Hartford Life and Accident Ins., 414 F.3d 994 (2005). In King, the Eighth Circuit found that, when an administrator changes its original basis for denying benefits, courts should return the case to the administrator for further consideration. Id. at 1005. King is distinguishable from the instant case because it involved a plan that gave the administrator discretion in determining benefits. Furthermore, GEGLAC's denial letters note, inter alia, that Hillstrom did not establish his proof of eligibility and proof of loss. R. at AR0058-59. Although the letter denying Hillstrom's appeal found that he was not a "Salaried Employee," based on a boilerplate definition that does not appear in any substantive provision of the Policy, it also quotes the definition of "Active Full-Time Employee" and incorporated the reasons set forth in the prior correspondence. Id. at AR0053-54. The letter also concludes that Hillstrom did not receive a salary from Rehab One. Id. at AR 0054. While the policy uses the term "earnings," which is broader than salary, such a finding is in keeping with GEGLAC's repeated statements that "Dr. Hillstrom did not have any insurable income under this group disability policy." Id. at AR0453; see also id. at AR0583-84, AR0457, AR0464.

255 (8th Cir. 1995).  Because Hillstrom was not eligible for benefits under the terms of the

policy, Hillstrom cannot make this showing.

      For the first time, in Plaintiff's Memorandum of Law in Opposition to Briggs',

Kenefick's and GEGLAC's Motions for Summary Judgment ("Pl.'s Opp'n Brief"), Hillstrom

argues:

> even if the Court were to find that the evidence in the administrative record does not
> support Hillstrom's eligibility for coverage, there would be a disputed fact issue about
> whether Kenefick's negligence in developing the record resulted in the loss of that claim.
> Among other things, Kenefick failed to identify and submit the computer print-outs from
> Rehab One and Hillstrom's accountant that specified exactly how much Rehab One paid
> on a monthly basis and how those payments were distributed to the Rehab One officers
> (including Hillstrom individually) through HCA and [RMC] - exactly the information
> GEGLAC was seeking.  Any finding that Hillstrom was not entitled to benefits under
> ERISA accordingly does not, ipso facto, establish that Hillstrom was not damaged as a
> result of Kenefick's negligence.

Pl.'s Opp'n Brief at 7 (emphasis in original).  Plaintiff's argument that the malpractice claim

should survive is unpersuasive.  First, Plaintiff's Memorandum of Law in Support of his Motion

for Summary Judgment ("Pl.'s Summ. J. Brief) contains a protracted discussion of extensive

efforts by Kenefick from October 1996 through May 1999 to provide GEGLAC with the

appropriate information.  See Pl.'s Summ J. Brief at 19-32.  Second, and more importantly,

Hillstrom does not contest the legal relationship between Hillstrom and Rehab One, created by

the Employment Agreement and the Management Agreement.  Because Hillstrom is not an

"employee" who received "annual earnings" from Rehab One, he is ineligible for benefits under

the Policy.  Because Hillstrom is unable to proffer any information to overcome these

deficiencies, he can not show that "but for" malpractice on the part of Kenefick, his claim would

have been granted.  Consequently, Hillstrom's malpractice claim must be dismissed.

**D.**    **ERISA Penalties**

Under 29 U.S.C. § 1024(b)(4), plan administrators are required to provide a copy of the plan to a claimant upon written request. Failure to provide a copy of the plan to the claimant within thirty days subjects the plan administrator to a $100 per day penalty. 29 U.S.C. § 1132(c). Hillstrom argues, based on an internal GEGLAC memorandum, Kelleher had actual knowledge that the incomplete version of the policy sent to Kenefick may not have been the one in effect at the time of Hillstrom's accident. Despite repeated requests for the Policy, Hillstrom contends GEGLAC did not produce the third, certified version of the policy for another five years and eight months, or 2065 days. Consequently, Hillstrom requests the Court award $206,500 in penalties against GEGLAC.

Under Section 502(c) of ERISA, only a Plan Administrator can be liable for statutory penalties. 29 U.S.C. §§ 1132(c), 1024(b). The Plan Administrator is the "person specifically so designated by the terms of the instrument under which the plan is operated." 29 U.S.C. § 1002(16)(B). The employer is deemed to be the Plan Administrator in the event no one else is designated. Id. Hillstrom does not contest that GEGLAC was not designated as the plan administrator but argues this Court should hold "where an insurance company in fact responds to a participant's request for the applicable policy, and does not advise the participant that he must address his request elsewhere, the insurance company has an enforceable obligation to provide the right policy." Pl.'s Opp. Brief at 41 (emphasis in original). Hillstrom argues GEGLAC served as a de facto administrator. Hillstrom claims, unless GEGLAC is held accountable, Congress' intent to provide participants a remedy when they are denied timely information about their ERISA benefits is frustrated. In support of his position, Hillstrom relies on Law v. Ernst & Young, where the First Circuit held that a committee set up by the employer, which had "assumed and controlled the plan administrator's function of furnishing required information in

23

response to a plan beneficiary's request," could be held liable for ERISA's statutory penalties. 956 F.2d 364, 372 (1st Cir. 1992).

Regardless of the First Circuit's holding in Law, the Eighth Circuit has held that a plan insurer cannot be liable for statutory penalties under ERISA. Ross v. Rail Car Am. Group Disability Income Plan, 285 F.3d 735, 743-44 (8th Cir. 2002); see also Kling v. ADC Group Long-Term Disability Plan, 2005 U.S. Dist. LEXIS 9098, at *14-15 (D. Minn. 2005) (finding, based on Ross, that a plan insurer could not be considered a de facto Plan Administrator and be liable for ERISA statutory penalties); White v. Martin, 286 F. Supp.2d 1029, 1044-45 (D. Minn. 2003) (refusing to impose ERISA penalties against an entity not designated as the plan administrator). The explicit language of the statute limits statutory penalties to Plan Administrators. White, 286 F. Supp.2d at 1044. As the White court noted, "courts should be reluctant to tamper with an enforcement scheme that has been crafted as carefully as the one in ERISA." Id. at 1044-45 (citing Great-West Life & Annuity Ins. Co. v. Knudson, 534 U.S. 204, 209 (2002)). Therefore, this Court declines to recognize a cause of action against de facto plan administrators. For theses reasons, Hillstrom's claim that statutory penalties should be imposed against GEGLAC is dismissed.

**E.    Motion to Reconsider**

Given Hillstrom's ineligibility for disability benefits, it is unnecessary to reconsider whether the statute of limitations has run on Hillstrom's ERISA claims. Therefore, Briggs' Motion to Reconsider is denied as moot.

**F.    Motion to Strike**

Finally, Briggs submitted a Motion to Strike Reply Declarations Regarding Plaintiff's Motion for Summary Judgment on the grounds that said submission violates Local Rule 7.1(b)

24

and Rule 56(e) of the Federal Rules of Civil Procedure. Briggs claims the submission is also improper because it is outside the established administrative record. The declarations concern whether Hillstrom remains disabled and whether any disability was caused by the injury or by substance abuse. The declarations are not relevant to the Court's conclusion that Hillstrom was not an "employee" who received "annual earnings" from Rehab One, as required by the Policy. Consequently, it is not necessary to consider whether the declarations were appropriate and the Motion to Strike is denied as moot.

**G.    Declaratory Judgment**

Because Hillstrom is not an "employee" with "annual earnings" from Rehab One, Briggs' Counterclaim for a Declaratory Judgment that Hillstrom is not entitled to long-term disability benefits under GEGLAC's policy is granted.

### IV. CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Plaintiff Bradley J. Hillstrom, M.D.'s Motion for Summary Judgment [Docket No. 69] is **DENIED**;

2. Defendants John R. Kenefick and Briggs & Morgan, P.A.'s Motion for Reconsideration of the Court's Memorandum Opinion and Order Dated December 9, 2004 [Docket No. 65] is **DENIED AS MOOT**. The Motion for Summary Judgment [Docket No. 65] is **GRANTED**;

3. Defendant GE Group Life Assurance Company's Motion for Summary Judgment [Docket No. 72] is **GRANTED**;

4. Defendants John R. Kenefick and Briggs & Morgan, P.A.'s Motion to Strike Reply

25

Declarations Regarding Plaintiff's Motion for Summary Judgment [Docket No. 117] is **DENIED AS MOOT**;

     5.  Plaintiff Bradley J. Hillstrom, M.D.'s Third Amended Complaint [Docket No. 58] is **DISMISSED**; and

     6.  Defendants John R. Kenefick and Briggs & Morgan, P.A.'s Counterclaim for a Declaratory Judgment that Hillstrom is not entitled to long-term disability benefits under GEGLAC's policy [Docket No. 2] is **GRANTED**.

     **LET JUDGMENT BE ENTERED ACCORDINGLY.**

                            BY THE COURT:

                            _____s/Ann D. Montgomery_____
                            ANN D. MONTGOMERY
                            U.S. DISTRICT JUDGE

Dated:  September 19, 2005.